## Case No. 11,477.

### In re PUSEY.

[6 N. B. R. 40.] [1]

District Court, E. D. Michigan. Nov. 8, 1871.

BANKRUPTCY— NONFULFILLMENT OF CONTRACT OF PURCHASE—RETURN OF GOODS.

A. contracted with B. for the sale of certain scales, payment to be made by B.'s note on their delivery and after they were set up. They were delivered but not set up according to contract, and B.'s note was not given. Soon after this B. was declared bankrupt. A. petitioned to have his goods returned, which was granted, and an order entered accordingly.

On the petition of Morris N. Rowley for an order requiring the assignee to deliver to him, the said Rowley, as his property, three certain scales, of which the assignee has taken possession as assets of the bankrupt [A. Pusey]. An answer was put in by the assignee denying Rowley's right to the scales, and proofs have been taken.

Mr. Palmer (Ward & Palmer), for petitioner.

Mr. Driggs (Meddaugh & Driggs), for assignee.

LONGYEAR, District Judge. It appears by the proofs that some time in May, eighteen hundred and seventy-one, Rowley, by his agent, agreed to sell to the bankrupt three scales—two of three thousand five hundred pounds, each at one hundred and five dollars, and one at eight hundred pounds for thirty-six dollars, less five per cent. The scales were to be delivered and put up by Rowley, and the bankrupt was to give his note for

[1] [Reprinted by permission.]

the purchase price on six months' time. The time was to run from the time the scales were put up. Thus far there is no conflict in the proofs. The agent who made the sale testifies that beside giving the note the bankrupt was to give security on the scales. He also testifies that in a subsequent conversation with the bankrupt he admitted such to be the fact, and this last statement is corroborated by the testimony of the petitioner. This is denied by the bankrupt. Taking into consideration the further fact appearing by the proofs that such was the usage of the petitioner in making sales of this kind, and that we have the testimony of two against the one, standing equally fair, to say the least, with the one, the preponderance of evidence is decidedly in favor of petitioner's claim in this respect. It must therefore be considered that it was a part of the agreement that security was to be given. The contract was entire, and no note or security could be demanded until the scales nad first been all delivered and set up. It is equally clear that until so delivered and set up, and the note and security given, the property in the scales did not pass to the bankrupt, but remained in the petitioner, unless, as claimed by the assignee, there was a waiver of those conditions. Story, Sales, § 196 et seq.; Whitney v. Eaton, 15 Gray, 225; Riddle v. Varnum, 20 Pick. 280; Hirschorn v. Canney, 98 Mass. 149. Such is in fact conceded to be the effect of the contract; but it is claimed in behalf of the assignee, that there was a waiver, on account of which the scales did in fact become the property of the bankrupt. Dates here become somewhat important, and it is to be regretted that they do not appear with more certainty in the proofs. The facts, however, out of which such waiver is claimed, are substantially as follows: As we have seen, the contract was made some time in May, eighteen hundred and seventy-one. Some time in the June following, and in the latter part of the month, the scales were all taken to the premises of the bankrupt, where they were to be put up by the agent who made the sale; and one of the large scales and the small scale were put up. The agent was then taken sick and left. Soon thereafter the bankruptcy proceedings were commenced, and the other large scale has never been put up, and the note and security were not given. James Pusey, a brother of the bankrupt, testifies as follows: "I helped him" (the agent) "to set the first set up, and he showed me where it was best to set the second set and told me I and the carpenter could do it just as well as he could. He was taken sick just as he got the first set up. He told me to put up the second set and he would pay brother for doing so, and marked the place for it. I took them out of the box and they stand there yet, never were put up. I was at work for brother at that time." This was told to the bankrupt, as he testifies, two or three days afterwards, but nothing was

done in pursuance of it further than as above stated in James Pusey's testimony. If these facts had the effect to vary the contract so as to relieve the petitioner from his obligation to complete setting up the scales, then all that was to have been done on his part must be deemed to have been done, and he had the right to demand the note and security then, and not having done so he must be deemed to have waived the giving of them at the time, as a condition precedent to the passing of the property in the scales to the bankrupt, as is claimed on behalf of the assignee. But can these facts be given any such effect? What the agent said to James Pusey was not a proposition to the bankrupt; and if it had been it would then be necessary to show that it was accepted by him, or that he had acted upon it. It was a mere request or suggestion to James Pusey for him and the carpenter to go on and set up the remaining scale, not for the bankrupt, but for the petitioner; and when this was told to the bankrupt it does not appear that he even assented that they might do it. Certain it is that neither he nor his men ever acted upon the request or suggestion. I am clear, therefore, that the facts stated did not have the effect claimed, and hence that the property in the scales did not pass to the bankrupt, but remained in the petitioner. This being the situation at the time the bankruptcy proceedings were commenced, and as the assignee can claim no greater rights to the property than the bankrupt had, the prayer of petitioner must be granted. Ordered accordingly.